### 60486. McALLISTER v. THE STATE.

POPE, Judge.

Clarence P. McAllister, Sr., appeals his conviction of violating the Georgia Controlled Substances Act. We affirm.

1. A search warrant was issued on December 11, 1978 which authorized the search of appellant's premises and certain vehicles parked thereon. The police officer who swore out the warrant did so on the basis of information which he had received from a "reliable confidential source." Appellant enumerates as error the trial court's overruling of both his motion for disclosure of the informant's identity and his motion to suppress evidence.

The search warrant indicated that the affiant police officer had been contacted within the preceding 72 hours by a "reliable

confidential source" whom he had known for several years and that the source had personally seen a large quantity of marijuana at appellant's premises within the preceding 72 hours. The warrant also disclosed that the source had given the police officer information on five different occasions which had resulted in the arrest and conviction of four persons. The police officer's testimony at the hearing on appellant's motions was substantially the same as set forth in his search warrant affidavit. In addition, he testified that he had known the source for over two years; that the source had given him information within 30 days preceding the issuance of the warrant; that the source had never given a tip which had not resulted in an arrest and conviction; that the source had indicated roughly the amount of drugs which were found on appellant's premises; and that the source appeared to be personally acquainted with appellant.

"Since the sole question [at a hearing on a motion to suppress evidence] is whether the information offered to support the warrant meets the test for probable cause, there is no need to reveal the informer's identity. Whether or not an informer really exists is a question of evidence to be decided by the trial court after the officers have been thoroughly questioned and cross examined. If the court finds such evidence lacking, then the motion to suppress should be granted." *Keith v. State,* 238 Ga. 157, 159 (231 SE2d 727) (1977). See *Scull v. State,* 122 Ga. App. 696 (2) (178 SE2d 720) (1970). In our view, the evidence was sufficient to establish both the informant's existence and probable cause for the issuance of the search warrant. *Keith,* supra; *Bell v. State,* 128 Ga. App. 426 (196 SE2d 894) (1973). Therefore, the trial court did not err in overruling appellant's motions.

2. The evidence indicates that the justice of the peace (J.P.) who issued the search warrant went to appellant's premises approximately one hour after the police had arrived and had begun their search. He explained that he was just curious as to how the police officers conducted themselves. Appellant argues that the J. P.'s actions were not those of a neutral and detached magistrate required under the Fourth Amendment.

The record shows that the warrant was issued prior to the time the J. P. went to appellant's residence. He did not accompany the raiding party. Although he stepped to the screen door that led into the kitchen, he did not enter appellant's house nor did he actively participate in the search of the premises.

We concur in the trial court's comment that a "justice of the peace or anyone else issuing a warrant should not participate in the searches since . . . [that] might give the appearance of not being a

detached and neutral magistrate." See *Thomason v. State,* 148 Ga. App. 513 (251 SE2d 598) (1978). Nevertheless, "'[f]actual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous.' *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974). We do not believe the trial court's determination that the justice of the peace in this case was able to act as a neutral and detached magistrate was clearly erroneous." *Sanders v. State,* 151 Ga. App. 590, 592 (260 SE2d 504) (1979).

3. Appellant objected to the admission of a tin box and its contents into evidence; the box had been seized from appellant's house. Appellant contended that since the contents of the box had not been chemically analyzed, it was not properly identified as marijuana.

A forensic chemist, a six-year employee of the State Crime Lab and an expert witness for the prosecution, testified that he had conducted between 8,000 and 10,000 tests in the past to determine whether or not a given substance was marijuana. After an in-court examination, the chemist testified that the contents of the box looked and smelled like marijuana in his opinion. "We have found no case where the results of [such an examination] have been held inadmissible, though it would appear that its reliability would be tested by defense cross examination and rebuttal and that the weight to be given it by the jury would be an appropriate subject for defense argument." *Davis v. State,* 135 Ga. App. 203, 205 (217 SE2d 343) (1975). In any event, this evidence was merely cumulative of the nearly three pounds of laboratory-tested marijuana also found at appellant's premises during the search and admitted into evidence without objection. Therefore, this enumeration of error is without merit. Accord, *Williams v. State,* 144 Ga. App. 130 (2) (240 SE2d 890) (1977).

4. During his closing remarks to the jury, the prosecutor stated, "I didn't do this to try to be dramatic [pouring several plastic bags containing marijuana out onto the floor] but yet I think it's significant. You know what this is? Each of those is the type of stuff, let me just hold it up here, that's sold on the street for $20, $30 or whatever the going rate is, and you know where Mr. McAllister's house is, you know where the defendant's house is? It's right near Northside High School. And you know who most of these drug sales are made to? Young people." Appellant argues that there had been no evidence of any drug sales in this case, and that the injection of this issue by way of the prosecutor's closing argument was highly prejudicial and denied him a fair trial.

Appellant was indicted for violation of the Georgia Controlled

Substances Act for unlawfully having in his possession in excess of one ounce of marijuana. Although appellant was not charged with the sale of a controlled substance, the record discloses some evidence to the effect that appellant was "dealing" in illegal drugs. "Counsel is permitted, in the sound discretion of the court, to argue all reasonable inferences and deductions which may be drawn from the evidence, however illogical they may seem to the opposite party. [Cits.] What the law forbids is the introduction into a case by way of argument . . . facts which are not in the record and are calculated to prejudice a party and render the trial unfair. The language used in argument may be extravagant; but figurative speech is a legitimate weapon in forensic warfare so long as the facts upon which it is founded are in evidence. [Cits.] The [prosecutor's] argument referred only to facts in evidence and drew no unreasonable or improper inferences. This enumeration has no merit." *Haas v. State,* 146 Ga. App. 729, 730-731 (247 SE2d 507) (1978).

*Judgment affirmed. McMurray, P. J. and Banke, J., concur.*

DECIDED JANUARY 16, 1981.
Drug violation. Houston Superior Court. Before Judge Hunt.
*Robert L. Hartley,* for appellant.
*Stephen Pace, Jr., District Attorney,* for appellee.